UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BRIAN JONES, | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| v. | )  Civil No. 2:20-cv-161-DBH |
| | ) |
| MAINE CAT CATAMARANS, INC., | ) |
| et al., | ) |
| | ) |
|    Defendants | ) |

**ORDER ON DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT**

  Default judgment in this case was entered against the defendants on August 11, 2020.[1] (ECF No. 8). On September 10, 2020, the defendants moved to "set aside default judgment, set aside default and to allow a late answer." Defs.' Mot. (ECF No. 11).[2] The plaintiff objected to the motion on September 14, 2020. Pl.'s Opp'n (ECF No. 12). But all action stopped due to a bankruptcy stay as to one defendant, (ECF No. 17), which lasted until September 2021. (ECF Nos. 18, 19). The motion now has been fully briefed and is ready for ruling.

  The defendants "acknowledge that they failed to file a timely answer to the complaint . . . when it was due, on July 13, 2020." Defs.' Mot. at 2. But they invoke Federal Rule of Civil Procedure 60(b)(1) which allows relief from a final

---

[1] The default judgment was amended August 13, 2020, (ECF No. 10), to correct a typographical error in the final paragraph in converting the numerical dollar amount to words.
[2] They learned of the default judgment after the plaintiff notified the defendants' secured lender. Olson Aff. ¶ 10 (ECF No. 11-1).

judgment (here, the default judgment) for "excusable neglect."[3]  The First Circuit recognizes a number of factors that are relevant in determining whether neglect is "excusable,"[4] but the parties agree that under First Circuit precedents, "the reason for the delay is by far the most critical factor."  Defs.' Mot. at 4; see Pl.'s Opp'n at 5.[5]

Here the asserted reasons for the neglect to file an answer appear in the defendants' lawyer's affidavit.  He says that on behalf of the defendants he accepted service of process of the Complaint on about May 12, 2020, Olson Aff. ¶ 2 (ECF No. 11-1), then offers the following explanation for failing to respond to the Complaint thereafter:

> My law office, like many others, has been closed and or minimally staffed during the COVID epidemic and I mis-remembered and mis-calendared the response deadline. I was personally out of the office and unable to work for a number of days after accepting service due to the illness of my daughter who had an emergency appendectomy in Maine and then, later, a related emergency requiring hospitalization in New York City where I spent several days. My errors were exacerbated by lack of normal staffing that usually ensures that answers are filed in a timely manner. We typically have 2-4 people in an office where we normally have 20-25 and people work varying schedules and fill differing roles.

Olson Aff. ¶ 5.

---

[3] They refer also to Rule 59(e), Defs.' Mot. at 3, 4, but they do not elaborate how that provision (setting a 28-day limit for motions to alter or amend a judgment) affects the analysis.  Rule 55, the default judgment rule, says that the court "may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).

[4] Such as danger of prejudice to the nonmoving party; the length of the delay and its potential impact on judicial proceedings; and whether the moving party acted in good faith.  In re Sheedy, 875 F.3d 740, 744 (1st Cir. 2017), citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  Both Sheedy and Pioneer were bankruptcy cases, but the courts give excusable neglect the same treatment in Rule 60(b) cases.  See, e.g., Tubens v. Doe, 976 F.3d 101, 105-06 (1st Cir. 2020); Pratt v. Philbrook, 109 F.3d 18, 19, 22 (1st Cir. 1997).

[5] "Even where there is no prejudice, impact on judicial proceedings, or trace of bad faith, '[t]he favorable juxtaposition of the[se] factors' does not excuse the delay where the proffered reason is insufficient."  In re Sheedy, 875 F.3d at 744 (quoting Hosp. del Maestro v. NLRB, 263 F.3d 173,175 (1st Cir. 2001).

Lawyers are human beings; they make mistakes and omissions that can amount to neglect of their professional responsibilities. But that does not make all such neglect "excusable." Something more is required. Stonkus v. City of Brockton School Dept., 322 F.3d 97, 101 (1st Cir. 2003) (referring to "confusion over filing dates and busyness" as a "type of counsel error [repeatedly held] to be inadequate to support a determination of excusable neglect" under Rule 60(b)); de la Torre v. Continental Ins. Co., 15 F.3d 12, 15 (1st Cir. 1994) (being "preoccupied with other matters" is an excuse that has "regularly been found wanting"). As Judge Woodcock has observed, typically law firms adopt back-up measures and procedures to ensure that ordinary mistakes or omissions get avoided or corrected. Sometimes the failure of such procedures may be excusable. See Robinson v. Wright, 460 F.Supp.2d 178, 181-82 (D. Me. 2006).[6]

But the defendants' lawyer's explanation here does not meet that standard. He says that he "mis-remembered and mis-calendared the response deadline." That appears in the same sentence as his statement that his office was closed or minimally staffed on account of COVID, but he does not explain how his office situation bears upon his mis-remembering and mis-calendaring the deadline. He also describes his family's medical emergency (leading to his absence from the office) that occurred after he accepted service, but he does not explain how, without that emergency, his mis-remembering and mis-calendaring would have been corrected. Finally, he says that office staffing was greatly

---

[6] Robinson involved Fed. R. Civ. P. 6(b)(1)(B), but the defendants agree the standard is the same here. Defs.' Reply at 3 n.1 (ECF No. 26).

reduced, but again he does not explain how greater staffing would have found and corrected his initial mis-calendaring and mis-remembering error. I have sympathy for how COVID has created stress for lawyers and sympathy for this lawyer's particular family medical emergency, but he has not shown that those factors were the cause for his admitted neglect in failing to file a timely answer and thus made it excusable, and he has not demonstrated back-up measures that failed because of COVID and the medical emergencies. "Demonstrating excusable neglect is a 'demanding standard,'" and "routine carelessness by counsel leading to a late filing is not enough to constitute excusable neglect." Santos-Santos v. Torres-Centeno, 842 F.3d 163, 169 (1st Cir. 2016) (quoting earlier First Circuit cases). And although the other excusable neglect factors (prejudice, length of delay and impact on judicial proceedings, bad faith) favor the defendants, they do not excuse the neglect. In re Sheedy, 875 F.3d at 744 ("'[t]he favorable juxtaposition of the[se] factors' does not excuse the delay where the proffered reason is insufficient").

The defendants have another argument. They invoke Rule 55(b)(2)'s requirement that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." No such notice was provided to the defendants or their lawyer in this case before the plaintiff sought and obtained default judgment. But the plaintiff contends that the defendants had not entered an appearance in the lawsuit, so that notice was not required. Pl.'s Opp'n at 6. The defendants maintain that

"counsel for the Defendants appeared in the form of the acceptance of service which was filed [by the plaintiff] with this court." Defs.' Mot. at 4.

Generally, acceptance of service of process alone does not amount to an appearance in a federal lawsuit. See Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 937 (5th Cir. 1999) (the "procedural framework [of the Federal Rules of Civil Procedure] implies that a defendant can not make an appearance for purposes of Rule 55(b)(2) until after the plaintiff effects service and the defendant becomes susceptible to default. . . . mere acceptance of formal service of process cannot constitute an appearance for purposes of Rule 55(b)(2).") But the defendants rely upon the seemingly more expansive First Circuit reading of the rule, that "[a]lthough appearance in an action typically involves some presentation or submission to the court—a feature missing here—we have held that a defaulting party 'has appeared' for Rule 55 purposes if it has 'indicated to the moving party a clear purpose to defend the suit.'" Defs.' Reply at 5, quoting Key Bank of Me. v. Tablecloth Textile Co. Corp., 74 F.3d 349, 353 (1st Cir. 1996).

On this issue, the parties have presented no evidence, only contesting arguments in their briefs. The plaintiff's lawyer argues that because of previous interchanges between counsel, "Plaintiff's counsel reasonably believed that defendants had elected not to answer as a presumed cost-saving measure in light of either a pending bankruptcy filing or some other belief that their assets were protected from collection efforts, which was consistent with the months of discussions between counsel (and before that, between the parties themselves)." Pl.'s Opp'n at 3. The defendants' lawyer replies: "That might be the case, but it would have been at least as reasonable to assume that defense counsel's failure

5

to file the answer was an inadvertent error." Defs.' Reply at 6. I conclude that on a motion to set aside a default judgment, the burden is on the defaulted defendants to show that their behavior, in the absence of a conventional appearance, otherwise satisfied the Rule 55(b)(2) appearance requirement and that under the First Circuit Key Bank standard, defendants must show that their purpose to defend the lawsuit was "clear." This they have failed to do.

Because I do not find a basis for setting aside the default judgment, I do not address the defendants' arguments that the earlier entry of default should be set aside. Defs.' Mot. at 5-8.[7]

The defendants' Motion to Set Aside Default Judgment, Set Aside Default and to Allow a Late Answer is **DENIED**.

**SO ORDERED.**

**DATED THIS 16TH DAY OF NOVEMBER, 2021**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[7] The defendants also refer to the deadlines that ECF generates for responses to motions, Defs.' Mot. at 5; Olson Aff. ¶¶ 7-9, but I do not understand them to be making an argument based on those entries. The Federal Rules, not ECF entries, determine the legal requirements for court filings.